The next case up this morning is Ludwig v. USA, 21-1205. Good morning, Your Honors. Michael Rasek. I'm here on behalf of the plaintiff appellant, Dana Ludwig. This is the case involving the accident in the Forest National Park out in Oregon. The question before the court, I believe, comes down to a very simple question, which ironically has triggered a great number of pages for several years. And that's whether the pass, the ticket, that the Ludwig family obtained before they entered the park, was that a pass solely for parking? Or was that something else? The government's position, of course, is that that was a pass for parking. And because it was a parking pass, that implicates the Oregon immunity statute. I think the logical problem with that, as I hope we've set out in our briefs, is that it's twofold. One, the government, the Forest Service, cannot charge solely for parking. They dispute the nature of that provision in that particular statute. But it says you cannot charge solely for parking. And the other part of the statute that's at issue, of course, is the part of the statute that says, you can charge for amenities, but only if you have all six of these in one spot. And in this case, parking was one of those spots. Ergo, the charge here had to be for more than parking. The Forest Service isn't allowed, I don't believe, to split these things up, the various amenity fees, up into separate ones and say, well, this one's for parking, and that one gets us under the Oregon statute, but the other five are not. No matter what happened here, these people, this group was there, and they were either going to use or had the use of the amenities in that park. And once they, in fact, were there, and once those amenities are available, parking was implicated, but more than parking was implicated, and as soon as you get to a charge for more than parking, then the Oregon statute, I guess you call it the exception to the exclusion, disappears. So is it your view that the charge was for the amenities? What is your view that the $5 charge was for? The $5 charge was, it's what it says it was, it was a recreation, a day use pass, a recreation pass. I know the parties dispute that, but all over the place, it says it's a day pass, it's a recreation pass. When you go there, you have to pay a fee. And you pay the fee there because there are amenities. That's the only way, I'm sorry. Let me, I wanna follow up with Judge Zinni's question. But the only reason you need to pay the fee is if you park your car there. If you walk there, you don't have to pay a fee. Is that right? I disagree very slightly with that. I have to think about that. It turns out that if you don't park there, they're not going to charge you the fee. Whether or not that statute, whether or not you have to pay a fee, there is, I don't think clear, but we do, we agree. We believe that if you don't park there, you're probably not going to be charged the fee because they can't track you down. But the fact that some people who come there, and the reality is nobody's coming there that doesn't park there, that's our first point. Does the law say that if you don't park there, you have to still pay the fee? And the reason I ask that is because the way I understand the law to work is once you pay the fee, you get the display to put in your car. Yes, that's correct, yes. So there's no ticket. So it would be, to me at least, it would be weird if someone was just going to walk into the trail and went to purchase a pass, and they said, display this in your car, and the guy said, I don't have a car. Where do I put it? Right, I think then the obvious thing would be, well, you don't need one then. Is that? And the words you said, I'm not sure it's obvious that you don't need one. It's just that we're not going to make you get one for the very reasons you said. We can't track these people. I think it's the Alpern case pointed out that to try and track individuals in the park would be literally impossible. It would avoid the efficiency argument. And that brings me back to- It wouldn't be literally impossible. I mean, I assume the way the Rangers police the lot is they don't, like a lot of these places, like train lots, and we have these all over the place, you know, where you pay $5 or something like that to park, you put it in a box. And sometimes they check, and sometimes they don't. And I suspect that the Rangers sometimes go through the parking lots to see if they're displayed. I mean, you could probably go, we could probably go there today and not pay the fee, right? And maybe we'd get away with it. Maybe we wouldn't, right? But the point, I'm sure that, I presume that at some point, someone checks these cars to see if the fee there. But the fact that they don't check, the point though is the fact that they don't check, people who don't park there, doesn't mean that the fee there is just for parking. The fact that some people don't have, some people, whether they have to pay or not, nobody is going to track them down. And it would be impossible to track down the individuals. And I think, I believe the Elkhorn Court or the Adams Court recognize that. We have tens of thousands of acres, and these people sometimes go back into the woods for days or even a week or two. So I want to take a step back, please. Yes, Judge. This $5 fee you're arguing is an amenity recreational fee. Yes. Under 6802F, and there are the six factors identified there. Parking is one of them, picnic tables, security services, et cetera. So the statute says, it focuses on charge language. And it says a charge means the admission price or fee requested or expected by an owner in return for granting permission for or permission to enter or go upon the owner's land. That's what a charge is defined by. Even under your reading of the $5 being a recreational fee, how would that be a charge? Because the recreational fee is not for permission to go on the land, it's for the six factors that you've identified, the trash receptive, picnic tables, parking. How would that qualify for the first part of the statute of being a charge in the first place? Because, and I would disagree with the court, it is a charge to go upon the land. It's a charge to go upon the land with the amenities present. And if the amenities aren't there, there can't be a charge. But the recreational fee says it's for the amenities, not for entering the land. But the amenities are provided. The fee can only be charged if you enter the land where there is amenities. Without the amenities, I can enter the land, but then that statute doesn't, then they can't charge any fee. The only way that they can charge a fee is if there's amenities as part of, linked to my ability to use the land. And maybe that's my point, is that I'm linking this all together. And I think Your Honor is suggesting that it could be separated out. And I think that's the government's position. I think it was the Alpern Court, and I'm not sure this sheds light on it, but suggested an analogy. If you go into a restaurant, and at the end of the meal, there's a bill for 10 extra bottles of wine, and the waiter says, well, I had it in the basement available for you, and you didn't use it, but we're gonna charge because it was for you. That's not a good analogy for here, because here the government makes those amenities available to everyone. And whether you use them or not doesn't matter. It's part of the transaction. It's as if you went into the restaurant, and you say, we're gonna charge you for the wine, whether you drink it or not. They charge you whether you use the amenities or not. Alpern said that's logical. Using the amenities is not important. The fact that they're there is the key. And so when I use the land, I use the amenities under the law. And the only reason, the only charge there is because there are amenities. If there were no amenities, there'd be no charge. How does your argument, how is that consistent with the McCormick case coming out of the Oregon courts? The McCormick case, I think is readily distinguishable, primarily for two reasons. There was an administrative rule there that specifically said, this fee for this park is a parking ticket, and I believe it said, and it is not subject to review under the Oregon immunity statute. And looking back at the trial court or the district court briefs there, the ticket specifically said, this is a parking ticket. And I believe even the ticket said, this is not subject to the Oregon immunity. That ticket was very, very clear. And I think that distinguishes this case. I don't think that case would have come out the same way if they had the amorphous ticket here. And we have the other side of the coin. The ticket told these people, as we all know, it said it's a day pass. It didn't say it was a parking ticket. At some point, if we move to, it's clear what it is or not. Do we move to, it's ambiguous. If it's ambiguous, Oregon requires that you prove an affirmative defense by clear and convincing evidence. That's not clear and convincing evidence. And I would suggest for that reason alone, it fails. Unless the court has further questions on that point, the service of course raised as an alternative argument. And I don't know if the court wants me to go into that at this point, because my experience has been, for the most part, if the appellant prevails on one issue, the court sends the case back to the district court to let it sort out and organize what, in this case, is an incredibly convoluted record and complex. But the district's, the four services argument is that there's no policy issue, that policy, the policy function exemption, exception applies here. And our response to that was, it's simply not a policy decision. The evidence below was that various studies that should have been done before citing this bridge, they were not. If the bridge was wrongly cited, by that meaning it was placed in the wrong spot, the bridge was not secured as it originally had been to the ground, and there was no warning up. And- Mr. Ravsek, is that something that we could decide in the first instance, or would we have to remand to the district court? Because typically, the discretionary function exception is just very fact-dependent. And I, that's exactly, that's what I would, that's what I agree, that's what I brief asked the court to do. I was just concerned that I was missing something that the court wanted me to get to at this point. And in this particular case, even a brief review of the record will show that there are a tremendous number of facts involved there, and pages after page of deposition testimony which probably fall within the district court's bailiwick. Unless the court has further questions for me on that point, we simply ask that the court reverse and remand. Thank you. Thank you. Mr. Hale. Good morning. May it please the court, counsel. Mr. Ravsek started out his argument by telling you that the issue in the case is whether this fee was solely for parking. And I disagree with that for two reasons. So in the first case, I think it's worth pointing out that it's common for amenities to be provided along with parking. If you go to a parking lot here in Chicago, they'll provide security services. There'll be signs. They'll have lighting. I mean, there are various amenities that are provided. And still, you're paying a parking fee. And the Oregon Recreational Use Statute is what we're looking at here, whether this falls within the definition of charge or parking fee under the Oregon Recreational Use Statute. And that statute doesn't say the fee has to be solely for parking or there can't be amenities provided. In fact, I think, really, you don't even have to, I mean, the parking issue is secondary here. You start off with looking, as Judge St. Eve pointed out, at the definition section of the Oregon Recreational Use Statute, which defines a charge that negates immunity. And that statute says that it's an admission price. It's something that you pay in order to be granted, to quote it, in return for granting permission for a person to enter. And it's not true that you need to pay this fee for permission to enter the National Forest. So we can start with the fact that. What about Mr. Rastek's response to that, that we just heard, that you wouldn't be going on using the amenities if you didn't have to enter in the first place? So if the $5 is for a recreational fee or amenities, you're not gonna get those amenities unless you have to enter the park in the first place. So therefore, it is an admission price. We'll start with the fact that Congress has told the Forest Service, in the statute, you're prohibited from charging an entrance fee into lands that you manage. So the Recreation Enhancement Act says the Forest Service cannot charge an entry fee. And in this case, Mr. Rastek is wrong when he says the only way that you can get into this National Forest is to drive a car to this trailhead lot and park there. So people bike in, that's the evidence. People bike in, people walk in, people come in on horses. There are 16 parking lots at trailheads in the National Forest where parking's free. People drive into those parking lots all the time and enter the forest. There are roadside parking is permitted anywhere in the National Forest. People every day park on the roadside, enter the National Forest and recreate. And they can come and use the amenities there that are incidental to the parking that's provided. The Pacific Crest Trail is a through hiking trail that runs from Mexico to the Canadian border. And that runs through this wilderness. So people hike in there every day from out of state where they're walking in through that wilderness. So all kinds of people come there and don't pay that fee. Only people that have to pay the fee are people who park a vehicle in the trailhead parking lot. And that's the unrebutted testimony. There's no contrary evidence that was presented. And when I asked the plaintiff about this at her deposition, I didn't have to lead her or prompt her at all. And she volunteered that she understood that the fee was something that you had to pay in order to park in the trailhead lot. And I'm not saying that she's putting a label on it. I'm just saying she understood how the fee functioned. So the McCormick case is on point. That was an area that was called a day-use fee area. So that's a label that was put on it that you could argue, and the plaintiff did, that that defeated recreational use immunity. And the court did not accept that argument. And the district court here cited that. Mr. Ratzak points out that there were other factors involved there. Well, there are other factors here too. We have a congressional statute that says this is not an entrance fee. And so I think that pretty well covers what I heard the plaintiff argue about today. I think you do have, and I'm not going to address the discretionary function issue unless you have some questions about it, which I'd be happy to answer. But if there are no further questions, we'd request that the district court be affirmed. Thank you, Mr. Gabb. Thank you. Mr. Ratzak. Thank you. Just very briefly. The immunity doesn't apply if the owner makes any charge for permission to use the land. And just to make sure I was clear before, the permission to use the land here was a permission to use all of the land. They didn't pay $5 to just park. They paid $5 to use all the land. As soon as they paid to use all the land, that includes the amenities, as soon as you include the amenities, then you've exceeded the reach of the Oregon statute. The Oregon statute would let them collect $5 just to park. One of the courts said it's almost impossible just to have a place where you just solely park. It's almost always going to include this. If there were no amenities, we'd have a different case. Unless the court has further questions, that is all I can possibly add to that. Thank you. Thank you. The case will be taken under advisement.